******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., with whom McDONALD, J., joins, concurring in part and dissenting in part. I agree with the majority that multiple, distinct acts constitute separate violations of a standing criminal protective order, contrary to General Statutes § 53a-223a.[1] I disagree, however, that the statements made in the present case by the defendant, Cody M., were separate and distinct acts. The record reflects that the defendant's statements were uttered within seconds of each other in a continuous and uninterrupted stream of contact with the victim. In my view, there was neither an intervening event between the defendant's statements nor a change in the defendant's intent; his statements concerned the same general subject matter and were undertaken with a singular purpose. The defendant therefore committed only a single violation of the standing criminal protective order, for which he may be punished only once under the double jeopardy clause. Accordingly, I respectfully dissent from part I B of the majority opinion. I agree with the majority that any alleged error in the jury instruction on the definition of "harassing" was harmless and, therefore, join part II of the majority opinion.

The record reflects that there was a valid standing criminal protective order, which prohibited the defendant from, among other things, (1) "assault[ing], threaten[ing], abus[ing], harass[ing], follow[ing], interfer[ing] with, or stalk[ing]" the victim, or (2) "contact[ing] the [victim] in any manner . . . ." On September 1, 2015, the defendant was in the custody of the Department of Correction, which transported the defendant to a juvenile court proceeding regarding his children with the victim. Despite the existence of a formal court order prohibiting the defendant from contacting the victim, except as "allowed for purposes of visitation, as directed by [the] family court," he was placed in a seat at the same table as the victim in the courtroom, with nothing but one empty chair between them. At some point during the proceeding, the defendant began "trying to make small talk" with the victim. Specifically, the defendant whispered to the victim that he still loved her and asked her why she had a block on her phone. The defendant also reminded the victim that she had said she "would never do this to him . . . ." The victim "just ignored" the defendant and kept her eyes focused on the trial judge. The defendant's "tone changed," and he told the victim that she was "going to have problems" when he got "home, bitch," which "caught [the victim's] attention . . . ." The victim looked at the defendant, who mouthed "that he was going to fucking kill" her. The victim responded by saying "stop threatening me, I can hear you . . . ." The defendant replied "I didn't or I'm not." One of the attorneys informed the trial

judge that the defendant was "speaking to the [victim] while Your Honor is presiding." The trial judge admonished the defendant that "this is not the time for visit[ation] or socialization."

On the basis of his in-court statements to the victim, the defendant was charged with two counts of violating a standing criminal protective order under § 53a-223a and one count of threatening under General Statutes (Rev. to 2015) § 53a-62 (a) (2). Specifically, count one charged the defendant with violation of a standing criminal protective order "by having contact with" the victim, count two charged the defendant with violation of a standing criminal protective order "by threatening and harassing" the victim, and count three charged the defendant with threatening the victim. The defendant also was charged, in count four of the information, with a second count of threatening on the basis of threats he made to the victim outside of the courtroom after the conclusion of the juvenile court proceeding. The jury found the defendant guilty of all of the crimes charged. The trial court sentenced the defendant to five years of incarceration on the first count of violation of a standing criminal protective, followed by a consecutive sentence of three years of incarceration and seven years of special parole on the second count of violation of a standing criminal protective order. The trial court also imposed two concurrent one year terms of incarceration on the threatening counts, to be served concurrently with the first count of violation of a standing criminal protective order. Thus, the total effective sentence was eight years of incarceration followed by seven years of special parole.

On appeal, the defendant claims that, on these facts, his conviction under counts one and two of two offenses under the same statutory provision, § 53a-223a, violates his constitutional right to be free from double jeopardy. As the majority rightly points out, "[t]he proper double jeopardy inquiry when a defendant is convicted of multiple violations of the same statutory provision is whether the legislature intended to punish the individual acts separately or to punish only the course of action which they constitute." (Emphasis omitted; internal quotation marks omitted.) Part I of the majority opinion, quoting *State* v. *Garvin*, 242 Conn. 296, 304, 699 A.2d 921 (1997). Thus, to resolve the issue on appeal, we must "determine the 'unit of prosecution' intended by the legislature in enacting § 53a-223a."

I agree with the majority that, in enacting § 53a-223a, the legislature intended "to permit criminal liability for each discrete act in violation" of a standing criminal protective order. I further agree with the majority that, to determine whether the defendant's statements constituted a single act or multiple acts, we should consider the following factors: "(1) the amount of time separating the acts; (2) whether the acts occurred at different

locations; (3) the defendant's intent or motivation behind the acts; and (4) whether any intervening events occurred between the acts, such that the defendant had the opportunity to reconsider his actions." (Internal quotation marks omitted.) Part I B of the majority opinion, quoting *State* v. *Ruiz-Pacheco*, 336 Conn. 219, 241, 244 A.3d 908 (2020). Our agreement ends, however, with the application of these factors, which leads the majority to conclude that the defendant's statements during the juvenile court proceeding can be separated into multiple, discrete acts. Instead, given the proximity in time and space, the defendant's singular intent, and the lack of any intervening events between the defendant's statements, it is clear to me that the defendant committed a single violation of the standing criminal protective order under § 53a-223a.

It is undisputed that the first and second factors in the analysis, namely, the amount of time separating the defendant's statements and the location where they were uttered, favor the defendant. The defendant and the victim were seated in the same place in the courtroom throughout the encounter. The amount of time between the defendant's initial statements and his threatening statements was extremely brief. Indeed, as the trial court observed, "this is a trial about what happened in the course of about ten seconds." These factors are not dispositive, of course, because spatial and temporal proximity alone do not always trigger a double jeopardy violation. "[D]istinct repetitions of a prohibited act, however closely they may follow each other . . . may be punished as separate crimes without offending the double jeopardy clause." (Citation omitted; internal quotation marks omitted.) *State* v. *Miranda*, 260 Conn. 93, 122, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). But the immediate proximity of the statements in place and time are an important part of any analysis turning on discreteness and severability, and the fact that the statements were made during a brief and uninterrupted verbal contact with the victim strongly supports the conclusion that the defendant committed a single violation of the standing criminal protective order rather than two separate violations.

The third and fourth factors only bolster this conclusion. I reject the majority's characterization of the victim's silence as an "intervening event" that separated the defendant's initial affectionate statements from the threatening statements that followed immediately thereafter. To begin with, the victim's response—whether silent or spoken—strikes me as a red herring in this particular context. The defendant's verbalizations to the victim over a ten second time span constituted one act or transaction, whether delivered as a monologue or part of a dialogue, in the same way that a single, short telephone call from the defendant to the victim would have been one act or transaction,

regardless of the parties' speaking roles. If the majority's analysis is sustainable, it must explain why its logic would not subject a defendant to multiple violations of § 53a-223a (perhaps many, if the communication consisted of a back and forth dialogue) for a single, short telephone call consisting of content similar to that occurring here. I believe that an unacceptable degree of arbitrariness enters the analysis when the number of criminal violations depends on the speaker's punctuation choices, sentence or paragraph structure, or the conversational turns occurring in a brief, uninterrupted communication.

Moreover, even if such considerations were appropriate in the present context, it is more accurate, in my view, to characterize the victim's silence as a *non*event, or perhaps a *continuation* of the same event, rather than an intervening event in these circumstances. The victim did nothing and said nothing. There was no change of location or alteration of any other objective condition that would fit our normal understanding of what constitutes an intervening event. Silence, of course, can mean many different things, and the victim's failure to respond clearly meant something to the defendant, but it changed nothing except his emotional stratagem; he quickly replaced affectionate overtures with angry threats in his effort to persuade the victim to unblock his phone calls. The fact is that nothing happened between the defendant's initial statements and his threatening statements—nothing was said and nothing was done by the victim or anyone else in the courtroom. I am unaware of any case law, and the majority has cited none, holding that silence or inaction is an intervening event in the double jeopardy context.[2]

This brings me to the final factor on which the majority relies—its perception of a change in the defendant's intent. This point, in my estimation, confuses the defendant's singular intention during the prohibited contact—to persuade the victim to accept his phone calls—with the rapid change in tone or tactics used to achieve that objective. The fact that the defendant substituted threats for affection does not mark the end of one crime and the beginning of another. Whether through statements of endearment or intimidation, his purpose and intent remained the same, namely, to manipulate the victim into unblocking his phone number. I disagree with the majority that, during the few seconds between the defendant's initial statements and his threatening statements, he developed a " 'fresh impulse' " or a "different purpose . . . ." Part I B of the majority opinion; see *Whylie* v. *United States*, 98 A.3d 156, 165 (D.C. 2014) (holding that it would be "rank speculation" to conclude that one week break between phone calls "corresponded to a fork in the road and a fresh impulse not in evidence"); cf. *United States* v. *Chipps*, 410 F.3d 438, 449 (8th Cir. 2005) (under "impulse test," which "treat[s] as one offense all violations that arise from

that singleness of thought, purpose or action, which may be deemed a single impulse," there was only "a single impulse underlying [the defendant's] assaultive conduct" in light of "the uninterrupted nature of the attack on [the victim]" (internal quotation marks omitted)); *Hagood* v. *United States*, 93 A.3d 210, 226 (D.C. 2014) (describing "fresh impulse or fork-in-the-road test," which asks whether, "at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest," and holding "that something more than a momentary interruption is required to sever the singular continuous possession of a weapon into distinct, separately punishable criminal actions" (internal quotation marks omitted)).

Under the majority's holding today, an individual who violates a standing criminal protective order by uttering an uninterrupted stream of vile threats commits only one violation of § 53a-223a, but an individual who precedes, intersperses, or concludes his threats with "small talk" commits two or more separate violations of the statute. I can perceive no reason, and the majority offers none, why the legislature would want to punish the latter individual more harshly in this context than the former. Indeed, given the purpose of the statute and the legislative policy that it was designed to implement— to protect victims of domestic violence—it makes no sense to punish individuals who pose an unequivocal threat to the victim less harshly than those who do not. Such an outcome is not only illogical but also results "in convictions that are disproportionate to an offender's conduct," in violation of the double jeopardy clause. *State* v. *Morales*, 174 Wn. App. 370, 388, 298 P.3d 791 (2013); see id., 387–88 (holding that threat to cause bodily harm to single identified person at particular time and place was only one unit of prosecution of harassment, regardless of how many times threat was communicated to others).

The defendant's statements were made as part of a brief, one-sided verbal contact with the victim. As such, his conduct constituted only a single violation of the standing criminal protective order under § 53a-223a. Because the defendant stands convicted of two offenses under the same statutory provision for a single act or transaction in violation of the double jeopardy clause, I would reverse the defendant's conviction under count one of the information and remand the case for resentencing.[3] See *State* v. *Miranda*, supra, 260 Conn. 130 ("[u]nder the aggregate package view . . . the court may reconstruct the sentence in any way necessary to ensure that the punishment fits both the crime and the defendant"). I therefore dissent from part I B of the majority opinion.

[1] General Statutes § 53a-223a provides in relevant part: "(a) A person is guilty of criminal violation of a standing criminal protective order when an order issued pursuant to subsection (a) of section 53a-40e has been issued against such person, and such person violates such order.

"(c) Criminal violation of a standing criminal protective order is a class D felony, except that any violation that involves (1) imposing any restraint upon the person or liberty of a person in violation of the standing criminal protective order, or (2) threatening, harassing, assaulting, molesting, sexually assaulting or attacking a person in violation of the standing criminal protective order is a class C felony."

[2] The one case on which the majority relies, *State* v. *Brown*, 299 Conn. 640, 11 A.3d 663 (2011), illustrates precisely what is missing from this case— an actual intervening event that creates a temporal or spatial break sufficient to provide the defendant with a "clear opportunity . . . to reconsider his actions" and "[to formulate] a new criminal intent that was separate and distinct from the intent behind the initial [offense]." *State* v. *Ruiz-Pacheco*, supra,    Conn.   ; see id.,    (holding that defendant's two assault convictions did not violate double jeopardy clause because there was "[a] distinct break" in both time and place in fighting, and second assault was motivated by "a separate and distinct criminal intent"). In *Brown*, the defendant attempted to rob the victim, but the victim fought back by "slapp[ing] the gun away," "struggl[ing] for control of the gun," and "escap[ing] and [running] down" the street. *State* v. *Brown*, supra, 653. The victim's escape was an intervening event because it represented a fork in the road; the defendant could either chase after the victim or flee the scene of the crime. The defendant chose to chase the victim, shoot him, and rob him. Id., 653–54. The defendant's first crime (attempted robbery) and his second crime (completed robbery) were "two separate and severable crimes"; id., 654; because they were separated by time and space, the victim's escape, and the defendant's formulation of a new and distinct criminal intent. The facts of *Brown* contrast sharply with the facts of the present case, and *Brown* provides no support for the outcome reached here.

[3] Although the defendant was convicted twice under the same statute for the same conduct, his conviction under count two of the information is the greater of the two offenses because any violation of a standing criminal protective order that involves, among other things, threatening or harassing is a class C felony rather than a class D felony. See General Statutes § 53a-223a (c); see also General Statutes § 53a-35a (1) (A) (7) and (8) (providing that class C felony is punishable by "a term not less than one year nor more than ten years," whereas class D felony is punishable by "a term not more than five years"). It is well established that, "when a defendant has been convicted of greater and lesser included offenses" in violation of the double jeopardy clause, "the trial court must vacate the conviction for the lesser offense . . . ." *State* v. *Polanco*, 308 Conn. 242, 245, 61 A.3d 1084 (2013).

---